IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:11-CT-3032-FL

| WILLIAM BAUBERGER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | ORDER |
| ARTHUR DAVIS and SAMPSON HARRELL, | ) | |
| Defendants. | ) | |

The matter comes before the court on defendants' motion for summary judgment (DE 78) pursuant to Federal Rule of Civil Procedure 56, which was fully briefed. In this posture, the issues raised are ripe for adjudication. For the foregoing reasons, the court grants defendants' motion.

## STATEMENT OF THE CASE

On February 15, 2011, plaintiff, a state inmate, filed this action pursuant to 42 U.S.C. § 1983. Plaintiff alleged that defendants Arthur Davis ("Davis") and Sampson Harrell ("Harrell") (collectively, "defendants"), as well as former defendants Boyd Bennett ("Bennett"), Grady Haynes ("Haynes"), and Cheryl Bolton ("Bolton"), and the North Carolina Department of Correction ("DOC"),[1] acted with deliberate indifference to his serious medical needs in violation of the Eighth

---

[1] The court dismissed DOC and Bennett upon frivolity review, under 28 U.S.C. § 1915, and the court dismissed Bolten and Hayes, on September 17, 2012, upon granting their motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). The caption of this order reflects those defendants remaining in the case.

Amendment to the United States Constitution. On September 17, 2012, the court denied defendants' motion to dismiss and subsequently issued a case management order.

On May 20, 2013, defendants filed a motion for summary judgment arguing that plaintiff's action is barred by the statute of limitations. Alternatively, defendants argue that plaintiff failed to allege a constitutional violation and raise the affirmative defense of qualified immunity. Plaintiff responded on August 9, 2013, and defendants filed a reply on September 6, 2013.[2]

## STATEMENT OF FACTS

Viewed in the light most favorable to plaintiff, the facts may be summarized as follows. In October 2006, plaintiff injured his upper arm while working out on the recreation yard at Warren Correctional Institution ("Warren"). Compl. ¶ IV. On March 15, 2007, plaintiff re-injured his elbow. Davis Aff. ¶ 10 and Ex. 5.

On March 27, 2007, plaintiff saw a nurse in response to a March 26, 2007, sick call appointment request complaining about pain in his left elbow and arm. Davis Aff. ¶ 8. Upon examination, the nurse noted yellowish bruising and that plaintiff's left upper arm was tender to the touch. Id. and Ex. 3. The nurse further noted that plaintiff was using an old elastic brace. Id. The nurse's assessment was a non-emergent alteration in comfort, and the nurse placed plaintiff's chart in line for a chart review by a physician. Id.

On March 29, 2007, defendant Davis reviewed plaintiff's chart.[3] Id. ¶ 9. Based upon his chart review, Davis determined that plaintiff's pain was musculoskeletal, and he ordered Percogesic

---

[2] The court allowed plaintiff until November 21, 2013, to file a sur-reply, but plaintiff did not do so.

[3] March 29, 2007, was the first date that defendant Davis reviewed plaintiff's chart or rendered any treatment for any of his alleged medical needs. Davis Aff. ¶ 9.

2

(pain reliever) for one month to treat plaintiff's pain. Id. ¶ 9 and Ex. 4. Davis also instructed that plaintiff return to the clinic in two to four weeks if his symptoms persisted. Id.

On April 4, 2007, plaintiff attended an appointment with a nurse in response to a April 3, 2007, sick call request in which plaintiff requested a refill of his allergy medication Claritin and a follow-up regarding his left elbow. Id. ¶ 10 and Ex. 5. Plaintiff informed the nurse that he was experiencing shooting pain from his left elbow to his shoulder. Id. Plaintiff explained that the injury to his elbow took place over a year prior to the date of his examination, but that he had re-injured it around March 15, 2007. Id. The nurse observed tightness in plaintiff's left elbow, but did not note any bruising. Id. The nurse assessed plaintiff with an alteration in comfort, and noted that plaintiff had just been prescribed Percogesic. Id. The nurse further instructed plaintiff to notify the clinic if the prescribed medication was ineffective. Id.

Plaintiff saw a nurse for a follow-up appointment on April 11, 2007. Id. ¶ 11 and Ex. 6. Plaintiff informed the nurse that he continued to experience pain while taking the prescribed Percogesic. Id. The nurse examined plaintiff, assessed him with a "knowledge deficit," and referred him to a physician for an appointment. Id.

On April 16, 2007, defendant Davis examined plaintiff for the first time. Id. ¶ 12 and Ex. 7. Plaintiff informed Davis that he sustained his left arm injury over a year prior to his examination while lifting weights, and that he recently re-injured his arm when he slipped in the shower. Id. Plaintiff further complained about pain in his triceps area, especially when extending his arm. Id. At the conclusion of the examination, Davis assessed plaintiff with tendinitis of the left elbow and prescribed steroids and bracing. Id.

On April 29, 2007, a nurse examined plaintiff in response to plaintiff's sick call request in which he complained of continued pain in his left elbow and triceps. Id. ¶ 13 and Ex. 8. The nurse noted that plaintiff had completed his Prednisone taper and that although plaintiff reported that the pain in his left arm had improved, he still described his pain as constant. Id. The nurse referred plaintiff to the physician for a chart review. Id. Defendant Davis subsequently reviewed plaintiff's chart, ordered Percogesic, and instructed plaintiff to return to the clinic in two to three weeks if necessary. Id. ¶ 14 and Ex. 7.

On May 12, 2007, plaintiff was examined by a nurse and requested that she provide him with a steroid injection. Id. ¶ 15 and Ex. 9. The nurse referred plaintiff to defendant Davis. Id. Davis subsequently examined plaintiff, and plaintiff informed him that his left elbow had improved with the use of oral steroids, but that he would like a steroid injection. Id. ¶ 16 and Ex. 10. In response, Davis ordered plaintiff a steroid injection to be taken with an oral pain reliever. Id.

On June 3, 2007, plaintiff was examined by a nurse in response to a sick call request complaining of continued pain. Id. ¶ 17 and Ex. 11. Upon examination, the nurse noted that plaintiff had an appointment with a camp physician on June 7, 2007,[4] and that he was scheduled for a steroid injection. Id.

On June 11, 2007, plaintiff attended an appointment with defendant Davis in order to receive his steroid injection and for treatment of his elbow pain. Id. ¶ 18 and Exs. 10, 12. Davis assessed plaintiff with tendinitis of the left elbow. Id. Plaintiff received the steroid injection at his appointment. Id.

---

[4] Plaintiff's appointment was rescheduled for June 11, 2007. Id.

4

On June 26, 2007, a nurse examined plaintiff in response to a sick call request complaining of continued pain. Id. ¶ 19 and Ex. 13. Plaintiff reported that the steroid injection was not yet effective in treating his elbow pain. Id. The nurse noted that plaintiff was taking Indocin, which provided pain relief for his back. Id. Plaintiff was evaluated by a nurse again on July 10, 2007, and again complained of pain in his left elbow. Id. ¶ 20 and Ex. 14. The nurse submitted plaintiff's chart for physician review. Id. Defendant Davis reviewed plaintiff's chart on July 16, 2007, and instructed plaintiff to refrain from heavy lifting or weight lifting for one month. Id. ¶ 21 and Exs. 12, 15.

On August 7, 2007, plaintiff saw a nurse in response to a sick call request. Id. ¶ 22 and Ex. 16. Upon examination, the nurse noted that plaintiff's pain increased when he engaged in pushing motions. Id. The nurse also noted that popping and crackling could be heard. Id. The nurse submitted plaintiff's medical chart for review by a physician. Id. Defendant Davis reviewed plaintiff's chart on August 30, 2007, and ordered plaintiff Percogesic. Id. ¶ 23 and Ex. 12. This was the last time Davis treated plaintiff. Id. ¶ 24.

On September 12, 2007, a nurse examined plaintiff in response to a sick call request submitted by plaintiff complaining of continued pain in his left elbow and left knee. Harrell Aff. ¶ 9 and Ex. 3. Plaintiff informed the nurse that he had been prescribed Percogesic, but that it did not provide pain relief for his elbow. Id. The nurse noted that there was slight swelling of plaintiff's elbow and that plaintiff could not fully extend his elbow. Id. The nurse referred plaintiff to a physician for further evaluation. Id.

Defendant Harrell examined plaintiff on September 19, 2007. Id. ¶ 10 and Ex. 4. Harrell noted plaintiff's history of elbow pain as well as his history of magnetic resonance imaging ("MRI")

5

testing, an orthopedic consultation, and electromagnetic radiation ("x-ray") testing. Id. Upon examining plaintiff, Harrell noted good range of motion in plaintiff's left elbow. Id. Harrell assessed plaintiff with left elbow pain and ordered Voltaren to treat plaintiff's pain and inflamation. Id.

Plaintiff subsequently was seen by a nurse in response to sick call requests on both October 2, 2007, and October 13, 2007. Id. ¶ 11. On both occasions plaintiff complained of continued pain. Id. ¶¶ 11, 12 and Exs. 5, 6. After his first visit, the nurse attempted to provide him with Ibuprofen and analgesic balm, but plaintiff refused both.[5] Id. ¶ Ex. 5. At his second appointment, plaintiff informed the nurse that he felt something tear in his left elbow. Id. ¶ 12 and Ex. 6. The nurse observed that plaintiff had a purple bruise on his left elbow, but no swelling was observed. Id. The nurse further observed that plaintiff had normal range of motion. Id. The nurse noted that plaintiff's elbow was tender to palpation and that plaintiff was not wearing the neoprene sleeve that had been previously prescribed. Id. The nurse documented plaintiff's refusal to take Percogesic and the fact that plaintiff returned his remaining Percogesic. Id. Finally, the nurse noted that she would refer plaintiff's chart to be reviewed by the physician. Id.

On October 18, 2007, plaintiff again was seen by a nurse in response to a sick-call request in which he complained of continued pain, swelling, and bruising in his left elbow. Id. 13 and Ex. 7. The nurse noted that plaintiff's injury appeared to be caused by hitting it on something, but plaintiff denied such injury. Id. Instead, plaintiff claimed that he was getting out of a chair and that he felt a sensation in his elbow when he pushed with his hands to get up. Id. The nurse noted that

---

[5] The nurse's plan at the conclusion of the first appointment was to notify the physician, but there is no indication in plaintiff's medical records that the nurse contacted defendant Harrell. Id. ¶ 11 and Ex. 5.

6

plaintiff's chart already was scheduled to be reviewed by a physician on October 24, 2007. Id. The nurse provided plaintiff with Motrin. Id.

On October 24, 2007, defendant Harrell reviewed plaintiff's chart. Id. ¶ 14 and Ex. 4. Based upon his chart review, Harrell ordered that plaintiff receive Feldene (a non-steroidal anti-inflammatory to control pain and reduce swelling). Id. Harrell also directed that plaintiff return to the clinic in two weeks so that Harrell could determine whether the prescribed medication was effective. Id.

On November 2, 2007, a nurse examined plaintiff in response to a sick call request submitted by plaintiff complaining of pain and bruising in his left elbow. Id. ¶ 15 and Ex. 8. At that appointment, plaintiff stated that he had experienced chronic pain in his left elbow for over one year, and rated his pain a four on a scale of one to ten. Id. Plaintiff further stated that the prescribed Feldene provided some relief. Id. The nurse noted that plaintiff's elbow was reddened with slight bruising. Id. The nurse decided to continue plaintiff on his present treatment and instructed plaintiff to avoid strenuous activity that would aggravate or increase his pain. Id. Then, on November 5, 2007, a nurse responded to plaintiff's next sick call request complaining of elbow pain by informing plaintiff that he was already on the list to see the physician. Id. ¶ 16 and Ex. 9.

Defendant Harrell examined plaintiff on November 7, 2007. Id. ¶ 17 and Ex. 10. The primary focus of the visit was plaintiff's knee pain. Id. Harrell advised plaintiff to return to the clinic in one week so that Harrell could reassess plaintiff's left elbow and left knee. Id.

On November 14, 2007, defendant Harrell examined plaintiff for his one-week follow-up. Id. ¶ 18 and Exs 4, 10, 11. Upon inspection of plaintiff's left elbow, Harrell noted that there was a possible bulge in plaintiff's muscle, a chronic deformity, and general tenderness. Id. Harrell also

7

noted that plaintiff exhibited a good range of motion. Id. Harrell assessed plaintiff with left elbow pain and ordered that plaintiff apply Bag Balm Ointment to his left elbow for three months. Id. Harrell did not have any interaction with plaintiff at Warren after this appointment. Id. Plaintiff was transferred from Warren to Piedmont Correctional Institution on March 6, 2008. Id.

## DISCUSSION

A.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.     Analysis

Defendants raise the defense of qualified immunity against plaintiff's § 1983 action. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In other words, a government official is entitled to qualified immunity when (1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly

8

established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The court first determines whether defendants violated plaintiff's rights pursuant to the Eighth Amendment. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'" Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (internal quotation omitted)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious'"–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.'" See Strickler, 989 F.2d at 1379 (quotations omitted).

Assuming, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, the court turns to the subjective prong of the test–whether defendants acted with deliberate indifference. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837. An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

9

In the case at hand, plaintiff asserts that defendants refused to alter their diagnosis and course of treatment for his arm condition, despite his complaints of continued pain. Plaintiff argues that the circumstances of his treatment are similar to the facts of the Seventh Circuit Court of Appeals' decision in Greeno v. Daley, 414 F.3d 645 (7th Cir. 2005). In Greeno, the Seventh Circuit held that the fact that the plaintiff received some treatment in response to his persistent complaints of vomiting and heartburn was not dispositive of his Eighth Amendment claim. Id. at 654. Rather, the court in Greeno found that the defendants' "obdurate refusal" to alter the plaintiff's course of treatment, despite the plaintiff's repeated complaints that the medication was not working and that his condition was getting worse, raised a genuine issue of material fact with regard to whether the defendants acted with deliberate indifference. Id.

This action, however, is distinguishable from Greeno in that plaintiff's medical records reveal that neither defendants exhibited an "obdurate refusal" to alter their course of treatment despite plaintiff's complaints. Rather, the record reflects that both defendants altered their courses of treatment in response to plaintiff's feedback, and both repeatedly encouraged plaintiff to make a follow-up appointment if his pain persisted. In fact, plaintiff, on more than one occasion, informed medical staff that he experienced some improvement in his condition in response to the prescribed treatment. See Davis Aff. ¶¶ 13, 16 and Exs. 8, 10 and Harrell Aff. ¶ 15 and Ex. 8. Thus, the court's reasoning in Greeno is inapplicable in this case.

Plaintiff additionally complains that defendants misdiagnosed his medical condition. In support, plaintiff presented a letter from Dr. Charles Bauberger, stating that the North Carolina Department of Public Safety's medical staff provided an incorrect diagnosis for plaintiff's muscle

condition.[6]  Pl.'s Mem. (DE 89) Ex. 7, p. 1.  However, a misdiagnosis or an incorrect diagnosis is not actionable under § 1983.  See Estelle, 429 U.S. at 106; Johnson, 145 F.3d at168; see, e.g., King v. United States, 536 Fed. App'x 358, 363 (4th Cir. 2013) ("[T]he fact that King eventually received a root canal does not raise a plausible inference that the care he already had received, . . . including the pain medication, antibiotics, and an occlusion adjustment, was improper as initial treatment for tooth pain, much less that prison officials acted with deliberate indifference to his medical needs in proving this series of treatments."); Bridges v. Keller, 519 Fed. App'x 786, 787-88 (4th Cir. 2013) ("That [defendants] ultimately failed to correctly diagnose [plaintiff's] injury does not render their responses deliberately indifferent.  Further, defendants did not have actual knowledge of the precise nature of [plaintiff's] injury.  Thus, their treatment efforts, including pain medication, an x-ray, and steroid injections, do not constitute deliberate indifference.").

To the extent Dr. Bauberger's letter may be critical of defendants' treatment of plaintiff, it is not sufficient to establish a constitutional violation.  For instance, Dr. Bauberger's letter admits that defendants' initial treatment of plaintiff's elbow pain was appropriate.  Pl.'s Mem. (DE 89) Ex. 7, p. 1.  Dr. Bauberger further states that upon finding that the first stages of treatment were ineffective, prison staff should have provided radiologic studies, arthrocentesis, or steroid use.  Id. A review of the record, however, reveals that plaintiff was, in fact, provided steroid injections. Moreover, despite Dr. Bauberger's statement in his letter that he personally would have recommended an arthrocentesis or MRI to better diagnose the problem, this amounts to nothing

---

[6] The court notes that Dr. Bauberger examined plaintiff in May 2008, which was several months subsequent to the last date that defendants provided treatment to plaintiff.  Pl.'s Mem. Ex. 7, p. 2; Davis Aff. ¶ 24; Harrell Aff. ¶ 18.

11

more than a disagreement with medical treatment, which is not sufficient to state a constitutional violation. See, e.g., United States v. Clawson, 650 F.3d 530, 538 (4th Cir. 2011).

As for plaintiff's request for particular diagnostic testing, such as an MRI, and treatment, this amounts to nothing more than a disagreement over the proper course of treatment and is not actionable pursuant to § 1983. See, e.g., Russell, 528 F.2d at 319. Thus, plaintiff is not entitled to relief for this claim.

To the extent plaintiff alleges that there was a four month period of time in which he received no pain medications, plaintiff has not provided any factual support for this claim. In particular, plaintiff does not allege that defendants were involved with the alleged denial or delay in receiving his pain medications. Nor does plaintiff allege that he suffered any injury from the alleged conduct. Accordingly, the court finds that plaintiff's conclusory allegations regarding the alleged denial or delay in providing pain medications is insufficient to state a claim for deliberate indifference. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989).

Finally, the court finds that plaintiff has not presented any evidence to establish that defendants acted with deliberate indifference to his triceps injury. Plaintiff's medical records instead reflect that plaintiff received regular and consistent medical care while treated by defendants. Plaintiff's records further reflect that defendants were responsive to plaintiff's feedback regarding his treatment. Accordingly, the court finds that plaintiff's allegations fall short of stating an Eighth Amendment claim. See Farmer, 511 U.S. at 833-34 (finding that deliberate indifference requires that a prison official knows of and disregards a substantial risk to an inmate's health); Ward v. Deboo, No. 1:11cv68, 2012 WL 2359440, at *13 (N.D.W. Va. Jan. 18, 2012) ("The medical records submitted by the defendant demonstrate that the plaintiff was provided regular, continuous and

12

appropriate medical care under the circumstances, and that there has never been an intentional interference with a prescribed course of treatment. Accordingly, nothing in the record shows that the plaintiff's knee condition was not timely or properly treated"), aff'd, 482 F. App'x 852 (4th Cir. 2012); Blackburn v. South Carolina, No. C.A. No. 0:06-2011-PMD-BM, 2009 WL 632542, at * 11 (D.S.C. Mar. 10, 2009) ("At most, what Plaintiff has alleged is that Defendants were negligent in treating his condition, because they could have possibly treated it better. Such an allegation falls far short of the required standard that their conduct so 'shock the conscience' that this Court would conclude that they were deliberately indifferent to Plaintiff's medical needs."), aff'd, 404 F. App'x 810, (4th Cir. 2010); see also Norfleet v. Webster, 439 F.3d 392, 396 (7th Cir. 2006) ("To infer deliberate indifference on the basis of a physician's treatment decision, the decision must be so far afield of accepted professional standards as to raise the inference that it was not actually based on a medical judgment."). Because there is no evidence in the record that defendants actually knew of and disregarded any objectively serious condition, medical need, or risk of harm, plaintiff has not established the second prong of the Eighth Amendment test.

Based upon the foregoing, the court finds that plaintiff fails to satisfy the subjective prong of the Eighth Amendment test, and is unable to establish a constitutional violation. Thus, defendants are entitled to qualified immunity.

## CONCLUSION

In summary, defendants' motion for summary judgment (DE 78) is GRANTED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 25th day of February, 2014.

_____
LOUISE W. FLANAGAN
United States District Judge